UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LACY NAUMOSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:19-cv-491 |
| | ) |
| COSTCO WHOLESALE | ) |
| CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on the Motion for Protective Order to Bar the Use of Inadvertently Disclosed Attorney-Client Privileged Communications [DE 15] filed by the defendant, Costco Wholesale Corporation, on February 6, 2020, and the Motion to Strike the Portions of Defendant's Reply that Assert Work Product Doctrine [DE 22] filed by the plaintiff, Lacy Naumoski, on March 20, 2020.  For the following reasons, the Motion for Protective Order to Bar the Use of Inadvertently Disclosed Attorney-Client Privileged Communications [DE 15] is **GRANTED,** and the Motion to Strike the Portions of Defendant's Reply that Assert Work Product Doctrine [DE 22] is **GRANTED.**

*Background*

The plaintiff, Lacy Naumoski, initiated this matter against the defendant, Costco Wholesale Corporation, on December 23, 2019.  Naumoski worked for Costco from September of 2007 until she was terminated on November 24, 2018.  She alleges that Costco violated her rights under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.,* and the Family Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et seq*.

Naumoski suffers from migraines, anxiety, and depression.  She asserts that Costco

accommodated her disabilities for over a decade without issue. However, in April of 2018 Naumoski's new general manager, Lynda Calocci, informed her that Costco no longer would allow her to use approved FMLA to be tardy due to her migraines. Thereafter, Naumoski made several complaints of harassment and/or discrimination to Costco's "Ethics Point."

In October of 2018, Naumoski contacted regional operations manager, Wendy Davis, to voice her concerns. Naumoski indicated to Davis that she was concerned about losing her job because of her medical condition. Davis contacted Costco's in-house counsel, Michelle Hughes and Alysa Barancik, and outside counsel, Erin Dougherty Foley, for guidance on how to respond to Naumoski. Costco's attorneys contacted two management-level Costco employees, general warehouse manager Lynda Calocci and personnel manager Kyle Hofman, regarding Naumoski's attendance history and Costco's policies.

On October 29, 2018, Davis included the email communications between her, internal and external employment counsel, Calocci, and Hofman when she responded to Naumoski. Costco claims that these email communications are protected under the attorney-client privilege. However, Naumoski contends that the emails intentionally sent to her contain communications that constitute business, not legal, advice. Moreover, she has argued that Costco has waived its right to assert privilege.

Costco requested that Naumoski return the email communications. Counsel for Naumoski has refused. Therefore, Costco seeks a protective order under Federal Rule of Civil Procedure 26(c). Naumoski filed a response in opposition on March 5, 2020, and Costco filed a reply on March 13, 2020.

On March 20, 2020, Naumoski filed a motion to strike portions of Costco's reply. Naumoski asserts that Costco, for the first time in its reply, claimed that the email

2

communications were protected under the work product doctrine.  Costco filed a response in opposition on March 25, 2020.  Naumoski has not filed a reply, and the time for her to do so has passed.  Accordingly, these motions are ripe for ruling.

*Discussion*

In the interest of efficiency, the court first will consider the motion to strike.  Naumoski claims that Costco, for the first time, in its reply argued that the email communications were protected by the work product doctrine.  She contends that Costco did not raise the work product doctrine in its motion for protective order.  However, Costco asserts that it was responding to arguments raised by Naumoski in her response.

The "purpose for having a motion, response and reply is to give the movant the final opportunity to be heard and to rebut the non-movant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion." **Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.**, 2010 WL 1258052, at *2 (S.D. Ind. Mar. 25, 2010).  "New arguments and evidence may not be raised for the first time in a reply brief.  Reply briefs are for replying, not raising new arguments or arguments that could have been advanced in the opening brief." **Reis v. Robbins**, 2015 WL 846526, at *2 (S.D. Ind. Feb. 26, 2015) (citations omitted).

In the motion for protective order, Costco stated, "Davis was seeking legal advice, in order to respond to an inquiry from a discontented and potentially litigious employee (note that Plaintiff references an appointment with the EEOC in her communications with Davis…)".  (DE 15, page 6).  In her response, Naumoski sought to clear up any confusion Costco may have created by pointing out that her statement about going to the EEOC could not have motivated Davis to seek advice because it came after the email communications were exchanged.

Naumoski referred to the threat of litigation, a requirement of the work product doctrine.

3

However, she never specifically raised the work product doctrine in her response.  Moreover, Costco's motion for protective order also failed to raise the work product doctrine.  In fact, neither party even mentioned the work product doctrine nor presented any argument or case authority based upon it.  Accordingly, the court **GRANTS** the Motion to Strike the Portions of Defendant's Reply that Assert Work Product Doctrine [DE 22].

The attorney-client privilege protects communications between a client and his lawyer. "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S. Ct. 677, 683, 66 L. Ed. 2d 584 (1981); s*ee also* ***Menasha Corp. v. United States Department of Justice***, 707 F.3d 846, 851 (7th Cir. 2013) (explaining that the privilege extends even to adversaries who are part of a single party and is not destroyed because an organization is large and diverse).  The Seventh Circuit applies the privilege under the following principles:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991).  The party claiming the privilege bears the burden of establishing that all of the requirements for invoking the attorney-client privilege are met.  *White*, 950 F.2d at 430.  "The claim of privilege cannot be a blanket claim; it must be made and sustained on a question-by-question or document-by-document basis."  *White*, 950 F.2d at 430 (citing *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983)) (internal quotation omitted).

Emails, with sometimes different and multiple recipients and authors, add complexity to

the analysis of the attorney-client privilege.  *See* ***Thompson v. Chertoff***, 2007 WL 4125770, at *2 (N.D. Ind. 2007).  Moreover, some e-mails in which counsel are involved may contain factual information, which is not protected by the privilege, while others within the same strand may contain exclusively legal advice.  ***Thompson***, 2007 WL 4125770, at *2 (citing ***Muro v. Target Corp.***, 243 F.R.D. 301, 305 n. 4 (N.D. Ill. 2007)).  Consequently, each individual email in a string must be analyzed separately.  ***Thompson***, 2007 WL 4125770, at *2.

Costco seeks a protective order under Federal Rule of Civil Procedure 26(c) requiring Naumoski's counsel to return, and not to use, confidential and privileged email communications that inadvertently were sent to Naumoski while she was employed with Costco.  Costco claims that the email communications disclosed to Naumoski were within the scope of the attorney-client privilege.  Specifically, Costco asserts that the communications were "for the purpose of requesting and providing legal advice, both in the interpretation of language in Costco's Employee Agreement, and with a strategic view towards defense of a potential legal dispute with the individual who is now the Plaintiff in this case."  (DE 15, page 4).  Upon learning of the disclosure, Costco immediately requested the return of the email communications.  The court has conducted an *in camera* review of the email communications.

Naumoski has argued that the email communications constitute business, not legal, advice, and therefore are not privileged.  Naumoski received two excused absences a month in an effort to accommodate her medical condition.  After exceeding her two excused absences, she was disciplined under Costco's attendance policy.  Naumoski sent an email to Davis inquiring about the status of her employment because of her medical condition.  Davis requested assistance from Costco's in-house and outside employment counsel about how to respond to Naumoski.  The email communications that followed between Costco's attorneys and management-level

5

employees (Davis, Hofman, and Calocci) discussed Costco's attendance policy and Naumoski's attendance history.

The initial email communication sent from Naumoski to Davis is not protected because the attorney-client privilege only protects communications between client and attorney. *See Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007) (citation omitted) ("The attorney-client privilege protects communications made in confidence by a client to [its] attorney in the attorney's professional capacity for the purpose of obtaining legal advice."). Moreover, Davis's response sent to Naumoski on October 29, 2018, also falls outside the attorney-client privilege.

However, the additional email communications between counsel and Costco's management-level employees are protected under the attorney-client privilege. The email communications gathered relevant facts in order to adequately advise Davis on how to respond to Naumoski, a potentially litigious employee. *See Upjohn Co.,* 449 U.S. at 390-91 ("The first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant."). Costco's attorneys were acting in their capacities as attorneys. *See Sandra T.E. v. South Berwyn School Dist. 100*, 600 F.3d 612, 619 (7th Cir. 2010) ("[F]actual investigations performed by attorneys *as attorneys* fall comfortably within the protection of the attorney-client privilege.").

These privileged email communications were not made in the routine course of business. *See Dometic Sales Corp. v. Intertherm, Inc.*, 1988 WL 492342, at *10 (N.D. Ind. 1988) ("[C]ommunications made in the routine course of business, such as transmittal letters or acknowledgment of receipt letters, which disclose no privileged matters and which are devoid of legal advice or requests for such advice are not protected."). Instead, the clear purpose of the communications was to give relevant factual background so that adequate legal advice could be

given on how to respond to a disgruntled employee.  Accordingly, the court finds that the email communications between in-house and outside counsel and Costco's management-level employees are privileged.

Naumoski's reliance on *Sandra T.E. v. South Berwyn School Dist. 100*, 600 F.3d 612 (7th Cir. 2010) is misplaced.  In that case, the district court denied the school district's claim of privilege, and the circuit court reversed.  Although the circuit court made reference to an *Upjohn* letter as one factor to be considered, it also weighed the facts surrounding the formation of the challenged documents in finding that the attorney-client privilege existed.  In *Sandra T.E.* and the instant case, the attorneys were consulted for the purpose of rending legal advice.

Next, Naumoski claims that even if Davis's disclosure was a mistake it did not rise to the level of inadvertent.  She asserts that "[w]hile an unwitting disclosure of an email chain may definitely [be] a blunder. . . it [is] not an 'inadvertent disclosure,' as the cases define the term." (citing *Monco v. Zoltek Corporation*, 317 F. Supp. 3d 995, 1000–01 (N.D. Ill. 2018)).  However, in *Monco*, the court took issue with the fact that the email correspondence revealed the existence of another document that the defendant had neither produced nor listed on the privilege log.  *See Monco*, 317 F. Supp. 3d at 1000.  Moreover, the court stated that "the real issue here isn't inadvertent disclosure of the email chain; it's waiver of the privilege as to the draft agreement itself."  *Monco*, 317 F. Supp. 3d at 1000.  Unlike *Monco*, at the time of the disclosure, no lawsuit was pending and no discovery requests had been made.  *Monco* deals with claiming the privilege as an initial matter.  Thus, Costco had no obligation to produce documents or a privilege log.

Under **Federal Rule of Evidence 502(b)** the disclosure of information "does not operate as a waiver . . . if:  (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to

7

rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B). To determine if disclosure was inadvertent, a court must ask "whether the party intended a privileged or work-product protected document to be produced or whether the production was a mistake." *Coburn Group, LLC v. Whitecap Advisors, LLC*, 640 F. Supp. 2d 1032, 1038 (N.D. Ill. 2009) (citing **Federal Rule of Evidence 502**).  There is no bright-line rule regarding whether production was inadvertent. *Equal Employment Opportunity Commission v. Office Concepts, Inc.*, 2015 WL 9308268, at *3 (N.D. Ind. 2015).

Here, the disclosure of the email communications was a mistake.  Davis intended on responding only to Naumoski.  *See* (DE 15-1, ¶ 16).  She did not intend on disclosing the email communications from counsel and management personnel that went into crafting the response to Naumoski.  *See* (DE 15-1, ¶ 16-18).  Accordingly, the court finds that the disclosure of the emails was inadvertent.  Moreover, upon discovery of the inadvertent disclosure, Costco immediately requested that Naumoski's attorney destroy or return all copies of the email chain.

Finally, Naumoski contends that Costco has waived its claim of privilege because the communications were shared with third parties.  However, Davis, Hofman, and Calocci were not just "third parties."  Instead, they were managers of Costco that were "directly concerned" with Costco's attendance policy and Naumoski's unexcused absences.  *See Sylgab Steel & Wire Corp. v. Imoco-Gateway Corp.*, 62 F.R.D. 454, 456 (N.D. Ill. 1974) ("It is well settled that the dissemination of a communication between a corporation's lawyer and an employee of that corporation to those employees directly concerned with such matters does not waive the attorney-client privilege.").

In the corporate context, the privileged nature of a communication does not lose its status as such simply because it is disseminated among numerous employees of the corporation.

*American Nat. Bank and Trust Co. of Chicago v. AXA Client Solutions, LLC.*, 2002 WL 1058776, at *3 (N.D. Ill. 2002) (citing *McCook Metals L.L.C. v. Alcoa Inc*., 192 F.R.D. 242, 254 (N.D. Ill. 2000)).  Documents communicating legal advice to non-legal personnel are within the attorney-client privilege, as well as documents reflecting discussions among executives of legal advice.  *Baxter Travenol Laboratories, Inc. v. Abbott Laboratories*, 1987 WL 12919, at *5 (N.D. Ill. 1987).  The mere fact that a document is sent to many non-legal and few legal personnel is not determinative of whether it is privileged.  *Baxter Travenol Laboratories, Inc.*, 1987 WL 12919, at *5.  The Costco employees assisted the attorneys in giving the relevant factual background and their participation was required to enable the attorneys to render legal advice.  *See **Heriot v. Byrne***, 257 F.R.D. 645, 666 (N.D. Ill. 2009).  Accordingly, Costco did not waive its claim of privilege.

Based on the foregoing reasons, the Motion for Protective Order to Bar the Use of Inadvertently Disclosed Attorney-Client Privileged Communications [DE 15] is **GRANTED,** and the Motion to Strike the Portions of Defendant's Reply that Assert Work Product Doctrine [DE 22] is **GRANTED.**

The court **ORDERS** that the privileged email communications cannot be used in this litigation.  The court further **ORDERS** that the plaintiff return all copies of the privileged email communications to counsel for Costco.

ENTERED this 3rd day of June, 2020.

/s/ Andrew P. Rodovich
United States Magistrate Judge